COMMONWEALTH vs. CLAUDE BOLLING.

No. 07-P-1185.

Franklin. May 5, 2008. - September 12, 2008.

Present: GELINAS, COHEN, & GREEN, JJ.[1]

*Sex Offender. Sex Offender Registration and Community Notification Act.*

Discussion of the extensive registration scheme for sex offenders contained in
  G. L. c. 6, § 178C-178O. [621-623]
At the trial of a criminal complaint alleging violation of the registration provi-
  sions for sex offenders, the evidence, which established that the defendant,
  a homeless person who had registered as a sex offender in the town of
  Greenfield, had spent at most three nonconsecutive nights in one month at
  a friend's home in a neighboring town (and perhaps an unspecified number
  of other nights at the apartment of another person in that town), did not
  support a conviction on a charge of failing to provide notice of a change of
  home address, or primary residence, as required under G. L. c. 6,
  § 178H(*a*)(iii) [623-625], or on a charge of failing to report a secondary
  address [625-626].

COMPLAINT received and sworn to in the Greenfield Division
of the District Court Department on August 15, 2006.

The case was heard by *William B. McDonough*, J.

*Michael J. Fellows* for the defendant.

*Cynthia M. Pepyne*, Assistant District Attorney, for the
Commonwealth.

GREEN, J. We are called upon to consider again the applica-
tion of the Sex Offender Registration and Community Notifica-
tion Act, G. L. c. 6, §§ 178C-178P, to homeless sex offenders.
See *Commonwealth* v. *Rosado*, 450 Mass. 657 (2008); *Com-
monwealth* v. *Scipione*, 69 Mass. App. Ct. 906 (2007). The
defendant, who registered with the Greenfield police department
as a level three sex offender (listing his address as the "streets
of Greenfield"), was arrested by police in the neighboring town
of Montague after they received information that he had begun

---

[1] Justice Gelinas participated in the deliberation on this case prior to his
retirement.

spending nights in the apartment of a resident of that town. On appeal, the defendant contends that the evidence at his jury-waived trial was insufficient to support his conviction. We agree and reverse the judgment.

*Facts and procedural background.* Viewed in a light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the evidence at trial established the following facts. On June 6, 2006, the defendant came to the Greenfield police department to register as a level three sex offender.[2] Detective Laura Gordon assisted the defendant in filling out the registration form, by obtaining information from the defendant and filling in the blanks on the form. For the space designated "Permanent Address," the defendant specified "Streets of Greenfield, Franklin County, MA 01301." For the space designated "Mailing Address," the defendant specified "178 Avenue A — P.O. Box 84, Montague, Franklin County, MA 01376."[3] The space provided for "Temporary OR Out of State Address (If different than permanent)" was not completed; Detective Gordon drew a line through the space.

After completing the form, Detective Gordon read to the defendant the following notification, which appeared at the bottom of the registration form:

> "You are advised that you must notify, in writing, the Sex Offender Registry Board or the Police Department in the city or town in which you reside not less than 10 days prior to any change in residence, employment, or attendance at an institute of higher learning. You are further advised that you are required to immediately contact and advise of your presence, the appropriate authorities in any other state in which you locate yourself for the purpose of residence, employment, or attendance at an institute of higher learning. Failing to do so may subject you to criminal prosecution."

After Detective Gordon read the advisory to the defendant,

---

[2] The record does not describe the offense or offenses that led to the defendant's classification.

[3] In the space for "Mailing Address," the registration form stated that the mailing address "MUST accompany a permanent or temporary address."

the defendant checked the box stating that "the [above] require-ments were read to me and I understand these requirements," and signed the completed form. Above his signature, the form contained an attestation, under the pains and penalties of perjury, that the information provided by the defendant was true and accurate. After the defendant signed the registration form, Detec-tive Gordon gave the defendant a second form, which contained various information about the defendant's ongoing obligations. Among other things, the form stated that "[w]e expect you to comply with the state law (M.G.L. c. 6 Sec. 178C through P) which requires you to notify us of any change of residence ad-dress, both full and part-time residences, a minimum of ten (10) days prior to the change." The defendant signed this form as well, under a statement certifying "that I have read or had read to me, the above information and that I fully understand my du-ties and responsibilities with regard to registering as a sex offender."

Near the end of July, 2006, the defendant met Lori Martinez. Martinez lived in a two-bedroom, second-floor apartment in the Turners Falls section of Montague.[4] Montague is adjacent to Greenfield, and Martinez's apartment is approximately two or three miles from the Greenfield courthouse. On the day they met, the defendant asked Martinez if he could spend the night in her apartment, as he had no place to stay. Martinez agreed, and the defendant slept on her sofa.[5] The defendant stayed in Martinez's apartment twice more during July, but never more than one night in a row. The defendant did not pay Martinez for his stays or contribute to her household expenses.

On August 3, 2006, Martinez's mother died, and Martinez left her apartment to make funeral arrangements. Martinez locked her apartment upon her departure and did not notice anything different in her apartment when she returned several days later, following her mother's funeral. When Martinez returned to her apartment, the defendant came to visit her from time to time. Asked whether the defendant stayed overnight in her apartment in August, Martinez could not recall. Martinez was allowed to

---

[4]Martinez testified that she had converted a living room into a third bedroom.

[5]Martinez testified that she had no romantic relationship with the defendant and understood that he had a girlfriend.

testify, over the defendant's objection, that she was "aware" that the defendant stayed at a neighbor's house on occasion, though the record does not indicate the source of her knowledge, the identity or address of the neighbor (other than that it was not in the same apartment building), the number of occasions the defendant stayed at the neighbor's, or the dates.[6]

Staff Sergeant Christopher Williams of the Montague police department began an investigation of the defendant after receiving information that the defendant "was living on Fourth Street in Turners Falls."[7] On August 14, 2006, Williams knocked on the door to Martinez's apartment and asked for the defendant. Martinez went to a bedroom door, knocked, and told the defendant that someone was there to see him. Williams heard the bedroom door being unlocked, and then observed the defendant emerge from the bedroom, holding a cup of beer. Williams arrested the defendant. After a jury-waived trial in the District Court, the defendant was convicted on a charge of failing to provide notice of a change of address, as required under G. L. c. 6, § 178H($a$)(iii), and sentenced to one year in the house of correction.

*Discussion.* "The Legislature adopted G. L. c. 6, §§ 178C-178O, an extensive statutory registration scheme for sex offenders, in order to protect the public from 'the danger of recidivism posed by sex offenders' and to aid law enforcement officials in protecting their communities by providing them with information" (footnote omitted). *Commonwealth* v. *Rosado,* 450 Mass. at 659-660, quoting from St. 1999, c. 74, § 1. Convicted sex

---

[6]Martinez's testimony concerning the neighbor occurred during two exchanges with the prosecutor. During the first exchange, after asking whether the defendant asked to stay in Martinez's apartment at any other time after the first night and eliciting that he had done so "a couple other times," the prosecutor asked, "Did you have information that he stayed at anyone else's house?" and (after Martinez's affirmative response) "What information did you have?" Martinez responded to the latter inquiry that "I just know that he stayed at the neighbor's occasionally." Later, during Martinez's testimony about her return to her apartment after her mother's funeral, the prosecutor asked, "And at this time did you have information or were you aware that he was staying at other people's homes?" Martinez responded, "Just the neighbor's. Other than that I don't know."

[7]Upon the defendant's objection, Williams's testimony that he had "received information" was admitted for background purposes only, and not for its truth.

offenders must register with the Sex Offender Registry Board (board), which then determines the classification level of the offender. G. L. c. 6, §§ 178E, 178K(2). The classification level in turn determines certain details of the offender's registration obligations. Level three sex offenders, such as the defendant, must verify their registration information annually in person at the local police department in the city or town in which they live.[8] G. L. c. 6, § 178F¹/₂. In addition, the board annually mails a nonforwardable verification form to the last reported address of the offender, and the offender is required within five days after receipt of the verification form to sign it and register in person at the police department in the municipality in which the offender lives. *Ibid.* Pursuant to G. L. c. 6, § 178E(*h*), a sex offender who intends to move to a different city or town within the Commonwealth must register his intended new address with the board by mailing to it a form, at least ten days before establishing the new residence. Included among the information offenders must provide is their home address and any secondary addresses or intended secondary addresses. See G. L. c. 6, § 178E(*l*). "Secondary addresses" are defined as "the addresses of all places where a sex offender lives, abides, lodges, or resides for a period of 14 or more days in the aggregate during any calendar year and which is not a sex offender's primary address; or a place where a sex offender routinely lives, abides, lodges, or resides for a period of 4 or more consecutive or nonconsecutive days in any month and which is not a sex offender's permanent address, including any out-of-state address." G. L. c. 6, § 178C.[9] Section 178H specifies the punishment to be imposed on a sex offender who knowingly fails to register, fails to verify registration information, fails to provide notice of a change of address, or provides false information. The statute specifies that level two or three sex offenders who reside at a

---

[8]Level two offenders are subject to the same requirement.

[9]The definition of "secondary addresses," and the requirement to include secondary addresses as part of the information furnished by a sex offender upon registration, was added by amendment effective July 1, 2006. See St. 2006, c. 139, §§ 5, 9-20. The obligation to notify the board of changes in secondary addresses accordingly was in effect at the time of the events giving rise to the charge against the defendant.

homeless shelter must register every ninety days[10] but imposes no comparable requirement on homeless sex offenders not living in a shelter; however, that fact does not nullify the obligation of homeless sex offenders not living in a shelter to register. See G. L. c. 6, § 178F1/2; *Commonwealth* v. *Scipione*, 69 Mass. App. Ct. 906, 907 (2007).

As a general matter, "a statute is to be interpreted 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Commonwealth* v. *Welch*, 444 Mass. 80, 85 (2005), quoting from *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983). Criminal statutes are construed narrowly; "[w]e must resolve in favor of criminal defendants any reasonable doubt as to [a] statute's meaning." *Commonwealth* v. *Pagan*, 445 Mass. 161, 167 (2005), quoting from *Commonwealth* v. *Kerr*, 409 Mass. 284, 286 (1991).

The statute does not define the term "home address." "[W]here a statute does not define a term, we may interpret it 'in accordance with its generally accepted plain meaning.' " *Commonwealth* v. *Becker*, 71 Mass. App. Ct. 81, 87, cert. denied, 129 S. Ct. 320 (2008), quoting from *Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002). "Home" is defined as "one's principal place of residence." Webster's Third New Intl. Dictionary 1082 (2002). The same text defines "residence" as "the act or fact of . . . dwelling in a place for some time" or "the place where one actually lives . . . as distinguished from one's . . . domicile [or] a place of temporary sojourn." *Id.* at 1931. See Black's Law Dictionary 750, 546 (8th ed. 2004) (defining "home" as "[a] dwelling place" and "dwelling house" as "[t]he house or other structure in which a person lives; a residence or abode").

In construing the term, we also look to other provisions of the same statute for guidance. See *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 859 (2005), quoting

---

[10]We note that by St. 2006, c. 303, § 3, effective December 20, 2006, the requirement has been changed to every forty-five days.

from *Kargman* v. *Commissioner of Rev.*, 389 Mass. 784, 788 (1983) ("statutes should be interpreted as a whole to constitute a consistent and harmonious provision"). In particular, we consider the meaning of the undefined term "home address" with some reference to the definition of "secondary addresses" provided in the statute. As observed above, "secondary addresses" are those in which a sex offender "routinely lives, abides, lodges, or resides for a period of 4 or more consecutive or nonconsecutive days in any month and which is not a sex offender's permanent address." From that definition, it is apparent that, within the statutory scheme, an offender's "home address" denotes some greater degree of permanence, and a greater frequency of residence, than the transitory (albeit "routine") level of occupancy at a location for four or fewer nights in a month.[11]

That the term implies some degree of permanence is also indicated by the designation of the space furnished on the registration form for an offender's primary address: the applicable space on the form reads "Permanent Address." The form, generated by the board, of course cannot amend the statute. However, the manner in which the form requests information about the offender's home address illuminates to some extent the interpretation of the statute by the administrative agency charged with its enforcement. See *Wilson* v. *Commissioner of Transitional Assistance*, 441 Mass. 846, 851 (2004).[12]

We conclude that the term "home address" in the statute

---

[11]As noted above, "secondary addresses" also include addresses at which an offender resides for fourteen or more days during any calendar year.

[12]In any event, the request on the registration form for "Permanent Address" goes to the question of the defendant's intent, or knowing violation of his registration obligations under the statute. Having been asked to furnish his home address as his "permanent address," a registered sex offender would understand his obligation to notify the board of changes in his home address to attach only to nontransitory changes — at least as related to his "home address." We note in passing that the terminology employed on the form, or in the accompanying notification given to the defendant at the time he registered, does not mirror the terminology of the statute; while the statute refers to "home address," "residence," and "secondary addresses," the registration form requests information concerning the offender's "permanent address," "temporary address," and "mailing address," while the accompanying notification sheet refers to the offender's obligation to notify the board of any "change of residence address."

refers to an offender's primary place of residence.[13] To the extent that the Commonwealth suggests that an offender's "home address" is wherever the offender sleeps on any particular night, even if on a wholly transitory basis, the suggestion is incompatible with the common usage of the term, the greater frequency assigned under the statute to the lesser category of "secondary addresses," and the implication of some degree of permanence set forth in the form promulgated by the board.[14] As applied to the facts of the present case, it is plain that the evidence at trial was not sufficient to establish that the defendant had changed his home address (or primary residence) from Greenfield to Turners Falls.[15]

Our inquiry does not end with the conclusion that the evidence did not establish that the defendant changed his home address to Turners Falls. As the Commonwealth observes, a violation of the statutory obligation to register can also arise from a defendant's failure to report any secondary addresses, or changes thereto. Here, the term is clearly defined by the statute, and our examination accordingly may compare that definition to the evidence adduced at trial. As summarized above, the evidence established at most that the defendant spent three nonconsecutive nights in July, 2006, at Martinez's apartment in Turners Falls, and (perhaps) an unspecified number of other nights on unspecified dates at the apartment of another (unidentified) person in that town.[16] Since the statute defines secondary addresses to encompass four or more nights (consecutive or non-

---

[13]That is not, however, to erode the distinction between a residence and a domicile. See *Commonwealth* v. *Becker*, 71 Mass. App. Ct. at 92-93.

[14]Moreover, such a construction would be incapable of sensible administration, in light of an offender's obligation to notify the board at least ten days prior to any change of address. See *Commonwealth* v. *Rosado*, 450 Mass. at 662-663.

[15]Though the defendant did not move for a required finding of not guilty at the close of the Commonwealth's evidence, "Mass.R.Crim.P. 25(*a*), 378 Mass. 896 (1979), provides that a judge 'shall enter a finding of not guilty' on his own motion wherever 'the evidence is insufficient as a matter of law.' " *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 729 (1992). "Further, insufficient evidence presents a situation which is 'inherently serious enough to create a substantial risk of a miscarriage of justice.' " *Ibid.*, quoting from *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986).

[16]Martinez's testimony that the defendant stayed occasionally at a neighbor's home should not have been admitted over the defendant's objection directed

consecutive) in any month (or fourteen or more nights in any calendar year), the evidence at trial failed to establish a violation of the registration obligation with respect to secondary addresses as well.[17]

We recognize that the circumstances of homeless sex offenders pose particular difficulties for the administration of the sex offender registration statute. In the present case, the registration form completed by the defendant at least placed officials in Montague on notice of the defendant's regular presence in that community, by listing a Montague address as the defendant's mailing address. Nonetheless, the inherently transitory nature of homelessness makes it difficult to apply to homeless sex offenders the same considerations of residence applied to offenders who are not homeless. The difficulties of fitting homeless persons into the statutory scheme are not newly discovered. See *Commonwealth v. Rosado, supra; Commonwealth v. Scipione, supra.* However, it is not our proper role or function to rewrite the statute to address what may appear to be gaps in its scope or practical operation. See *Commonwealth v. Becker,* 71 Mass. App. Ct. at 94-96 (Cohen, J., concurring).

The evidence was insufficient as matter of law to support the defendant's conviction. The judgment of conviction is accordingly reversed, the finding is set aside, and the case is remanded for entry of a finding of not guilty.

*So ordered.*

---

to the lack of foundation, at least not without inquiry into the basis of Martinez's knowledge. We are unable to ascertain from the record whether Martinez's "knowledge" rested on hearsay statements by an unidentified third party, on statements made to her by the defendant himself, or on her own percipient observations. In any event, the testimony was entirely lacking in any detail concerning the number of occasions on which the defendant stayed at the neighbor's, or when such stays occurred. Significantly, there is no indication in the testimony that any of such occasions occurred in July; the only testimony about the time frame in which the defendant stayed with Martinez's neighbor referred to the period following the funeral of Martinez's mother in early August. See note 6, *supra.*

[17]Because the evidence does not establish that the defendant spent four nights in Turners Falls in any month, we need not consider what the term "routinely" adds to the statutory definition of "secondary addresses."