NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-349

COMMONWEALTH

vs.

LEE H. CARTER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Lee Carter, appeals from a decision of a Superior Court judge that found that he had violated his conditions of probation, and that revoked his probation as a result.  On appeal Carter argues that his due process rights were violated by the application of the preponderance of the evidence standard in determining that he had violated his conditions of probation.  Carter also argues that the judge erred in relying upon the hearsay evidence of the sexual abuse intervention network (SAIN) interview of a child victim that Carter was accused of indecently assaulting, and that absent the SAIN interview there was insufficient evidence to support a finding that Carter had committed that criminal act.

Additionally, Carter argues that the judge erred in ruling that he had failed to notify his probation officer of a change in his residence.

Carter's argument challenging the preponderance of the evidence standard is foreclosed by several decisions of the Supreme Judicial Court holding that preponderance of the evidence is the standard to be applied. See Commonwealth v. Jarrett, 491 Mass. 437, 445 (2023); Commonwealth v. Bukin, 467 Mass. 516, 520 (2014). Carter's argument that the standard violates the due process requirements of the Massachusetts Declaration of Rights accordingly must be directed to the Supreme Judicial Court. We also discern no abuse of discretion in the judge's consideration of the victim's SAIN interview, nor in the judge's ruling that Carter violated his conditions by failing to notify his probation officer of a change of residence. Accordingly, we affirm.

Background. Carter has a history of sexual offenses dating to 1993. That year, Carter pled guilty to rape of a child, G. L. c. 265, § 23, and indecent assault and battery on a child, G. L. c. 265, § 13B; his sentence included a term of probation.

In 2011, while on probation for the 1993 offenses, Carter raped a nineteen-year-old resident at a shelter where he worked. Carter pleaded guilty to rape, G. L. c. 265, § 22 (b), and indecent assault and battery, G. L. c. 265, § 13H. Carter was

2

sentenced to concurrent sentences of eight to ten years and eight to ten and one-half years in state prison, followed by six years of probation.

He was released from prison in April of 2020, and began his probation. One of Carter's conditions of probation was that he must "obey all local, state, and federal laws and all court orders." Another condition was that he "shall notify the probation officer immediately of a change of residence or employment." In March 2022 Carter was living with a roommate in Hardwick. Carter's roommate was periodically visited by his grandson, aged seven, who would sometimes stay overnight. On March 16, 2022, the grandson's mother spoke with the Hardwick police and reported that her son had spent the weekend at his grandfather's (Carter's roommate). She further reported that during that stay, Carter had touched her son's penis and buttocks.

Also on March 16, the victim's mother obtained a restraining order pursuant to G. L. c. 209A that required Carter to vacate the Hardwick house he shared with the grandfather. Carter was served with the restraining order, and advised that he would have to register as a sex offender in "whichever town he [went] to."

Carter checked in to the Copper Lantern motel in West Brookfield on March 16. Five days later, on March 21, Carter

3

went to the West Brookfield Police Department and informed an officer that he had moved to the Copper Lantern. The officer went to the Copper Lantern, where the owner showed the officer a check-in card with March 16 as the check-in date. The owner said that Carter had been staying at the Copper Lantern since March 16, and had asked about a long-term rental.

Also on March 21, Carter's probation officer, Meredith Yacoub, called Carter to let him know she was on her way to his house for a home visit. Carter told Yacoub that he was not at the Hardwick house, because he "had to leave." Yacoub asked Carter where he was located, and Carter told her that he was not able to tell her, per the advice of Carter's attorney. Yacoub told Carter that he was required to tell her where he was, and Carter told her that he was living at a hotel because he had been accused of "something," and had to leave the Hardwick house. Carter did not give Yacoub the exact location where he was, saying that he didn't know the name or the address. Yacoub later determined that Carter was staying at the Copper Lantern.

On March 22, 2022, the victim participated in a SAIN interview, which was videorecorded. The victim stated that after he went into his room to show Carter his race cars and trading cards, Carter began feeling the victim's buttocks and penis. The victim left, but was afraid to tell his grandfather. A few days later, the victim told his parents what happened.

4

On March 23, 2022, Carter was arraigned in the East Brookfield District Court on two charges of indecent assault and battery on a child under 14, G. L. c. 265, § 13B, and one charge of failing to register as a sex offender, G. L. c. 6, § 178H (a) (1).[1]  On March 25, 2022, a Notice of Alleged Probation Violation and Hearing was filed in Worcester Superior Court.  The alleged probation violations were indecent assault and battery on a child under fourteen, having previously been convicted of certain offenses, see G. L. c. 265, § 13B3/4, failure to register as a Level 2 or 3 sex offender, see G. L. c. 6, § 178H (a), and "[f]ailure to notify probation of change of address on 3/16/2022."

At the probation violation hearing, Carter moved to exclude the videorecording of the SAIN interview as unreliable hearsay. The judge reviewed the interview and found that it had sufficient indicia of reliability to be admissible. Specifically, the judge noted that:

> "[The victim] was able to interact in a very
> nonconfrontational way with the questioner.  His answers
> were direct.  They were narrative in format.  There were
> some leading questions, but the youngster was allowed to
> give a narrative response when questioned.  They came back

---

[1] These charges were later dismissed.  The charge for failing to register as a sex offender was dismissed in September of 2022.  The charges for indecent assault and battery were dismissed on the Commonwealth's motion in January of 2023; by that time the victim had stated that he did not remember the alleged incident, and the victim's mother was concerned that testifying might harm the victim's mental state.

to the same subject matters multiple times.  He gave consistent answers through the SAIN interview.  His demeanor was consistent with what you would expect from an eight-year-old, nine-year-old youngster.  So on -- based on my review of the SAIN interview . . . I find that based on his demeanor and presentation that he presents . . . as a substantially reliable witness . . . ."

At the close of the hearing, the judge ruled "[a]s to the charges of indecent assault and battery on a child under 14, I find that [Carter] is in violation of probation for having committed that offense . . . based on a preponderance of the evidence," crediting the SAIN interview and police reports regarding the alleged offense.  The judge also ruled "that there is a violation of probation based on [Carter's] failure to notify probation of a change of address."

Discussion.  1.  Due process challenge to the standard of proof.  Carter first argues that the preponderance of the evidence standard, as applied in his probation violation hearing, is unconstitutional because it violated his due process rights.  Carter contends that due process under the Massachusetts Declaration of Rights requires a higher standard of proof (the clear and convincing evidence standard).  Specifically, Carter argues that greater due process protections are required when more significant deprivations of liberty are at stake, and that despite his probationary status, a probationer nevertheless has a substantial interest in his liberty.  See Opinion of the Justices to the Senate, 423 Mass.

1201, 1231 (1996) ("[T]he process due in a particular case is a function of the severity of the deprivation"); Commonwealth v. Durling, 407 Mass. 108, 112 (1990) ("The due process clause . . . requires that the Commonwealth provide probationers with certain protections at surrender hearings"). Carter also points out that the Supreme Judicial Court has several times held that clear and convincing evidence is required in various proceedings where a person's liberty (or liberty interest) is at stake, such as pretrial detention under G. L. c. 276, § 58A, see Commonwealth v. Escobar, 490 Mass. 488, 492-493 (2022), involuntary commitment under G. L. c. 123, § 35, see Matter of G.P., 473 Mass. 112, 120 (2015), and sex offender risk classifications, see Doe, SORB No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 314 (2015). See also Birchall, petitioner, 454 Mass. 837, 853 (2009) (requiring clear and convincing evidence to prove civil contempt).

The Commonwealth responds that the Supreme Judicial Court has consistently affirmed the use of the preponderance of the evidence standard in probation revocation hearings. The Commonwealth also argues that the probation process grants liberty as a matter of grace, and that Carter's liberty interest is therefore conditional. See Durling, 407 Mass. at 115. It points out that Carter agreed to the conditions in his probation order, and that it is consistent with that agreement to use the

7

preponderance of the evidence standard to determine whether Carter breached his agreement with the Commonwealth. Commonwealth v. Holmgren, 421 Mass. 224, 227 (1995).

The decisions of the Supreme Judicial Court have consistently affirmed the application of the preponderance of the evidence standard in probation violation proceedings. See, e.g., Jarrett, 491 Mass. at 445. We are bound by this precedent, and so affirm the use of the preponderance of the evidence standard here.

2. Sufficiency of the evidence of indecent assault and battery. Carter next argues that even applying the preponderance of the evidence standard, the Commonwealth did not meet its burden to show that he committed indecent assault and battery. Carter argues that the SAIN interview was hearsay, and that the hearsay did not have substantial indicia of reliability because the victim's out of court statements were uncorroborated. See Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016).

In an appeal from a decision finding a violation of probation, "a reviewing court must determine 'whether the record discloses sufficient reliable evidence to warrant the findings by the judge[, by a preponderance of the evidence,] that [the probationer] had violated the specified conditions of his [or her] probation.'" Jarrett, 491 Mass. at 440, quoting

8

Commonwealth v. Morse, 50 Mass. App. Ct. 582, 594 (2000). "A determination whether a violation of probation has occurred lies within the discretion of the hearing judge," and we review such a determination for an abuse of discretion. Bukin, 467 Mass. at 519-521. However, when the judge's findings were drawn from documentary evidence, "we review the record evidence before [the judge] de novo." Commonwealth v. Costa, 490 Mass. 118, 124 n.2 (2022); see Commonwealth v. Tremblay, 480 Mass. 645, 656 (2018) (review of audio-video recording is de novo).

The SAIN interview and the police report drawing on the SAIN interview are hearsay. However, "hearsay evidence may be relied upon in a probation violation hearing where it has substantial indicia of reliability." Hartfield, 474 Mass. at 484. The factors that the hearing judge considers in determining reliability are:

> "(1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity." Id.

Contrary to the defendant's argument that corroboration is required, "[t]here is no requirement that hearsay satisfy all of the above criteria to be trustworthy and reliable." Costa, 490

9

Mass. at 124, quoting Commonwealth v. Patton, 458 Mass. 119, 133 (2010).

The hearing judge found that the SAIN interview was reliable based upon the internal consistency of the statements therein and the circumstances of the interview -- it was nonconfrontational, the victim gave narrative responses, and the victim's demeanor was "consistent with what you would expect from an eight-year-old, nine-year-old youngster." After reviewing the videorecorded SAIN interview, we discern no abuse of discretion (and indeed, we agree) with the hearing judge's assessment that the interview had substantial indicia of reliability. In addition to the factors that the hearing judge cited, we note that the victim's statements in the interview were based on personal knowledge and were made only ten days after the assault. See Costa, 490 Mass. at 126. There was sufficient evidence to find that the defendant committed an indecent assault and battery on the victim.[2]

3. Sufficiency of the evidence of change of residence. Lastly, Carter argues that the Commonwealth's evidence was insufficient to prove that Carter violated the probation condition he notify his probation officer of a "change of

---

[2] We note that the defendant does not argue that he was prevented from calling the victim as a witness, or that his due process right to present a defense was violated. Cf. Costa, 490 Mass. at 127-131.

10

residence."  Carter points out that the judge mistakenly used the phrase "change of address" in his findings, rather than "change of residence."  Carter argues that he was not required by his probation conditions to notify probation of a temporary change in "address"; rather, he was required to notify probation only if he changed his "residence," and, he argues, his short term stay in a hotel was not a "change in residence."  Carter argues that the word "residence" has a commonly understood definition, such that a change in "residence" required (1) a long-term move or (2) the establishment of a new "secondary address[]," as defined in the context of sex offender registration by G. L. c. 6, § 178C.

The question thus involves the definition of "change in residence," as it should reasonably be understood in a condition of probation.  Our case law has defined "residence" as "'the act or fact of . . . dwelling in a place for some time' or 'the place where one actually lives . . . as distinguished from one's . . . domicile [or] a place of temporary sojourn.'"  Commonwealth v. Bolling, 72 Mass. App. Ct. 618, 623 (2008), quoting Webster's Third New International Dictionary 1931 (2002); see also Black's Law Dictionary 1565 (11th ed. 2019).  Although the above definitions arise from somewhat different contexts than that before us, the definitions are useful in considering whether a registered sex offender on probation has

11

changed his residence. On the one hand, one can change their residence without changing their domicile, as a change in residence does not require an intent to remain in the new location permanently or indefinitely. Commonwealth v. Becker, 71 Mass. App. Ct. 81, 93 (2008). On the other hand, a "residence" also is not a place one travels to and occupies temporarily. For example, a trip to stay overnight, or for a few days, with a clear intent to return -- a "temporary sojourn" -- is not a "change in residence." See Bolling, 72 Mass. App. Ct. at 624-625.

Carter argues that his move to the Copper Lantern motel was just such a "temporary sojourn," but on the evidence presented we are not persuaded that the judge erred in concluding otherwise. See Bolling, 72 Mass. App. Ct. at 623. On March 16, Carter was served with a restraining order and told that he had to leave, and that he would have to register as a sex offender in his new location. By March 21, when Carter reported that he was staying at the Copper Lantern, he had been staying there for five days. Carter then reported to his probation officer that he was "living at a hotel," and reported to the West Brookfield Police that he had "just moved into the Copper Lantern." The owner of the Copper Lantern stated that Carter asked about a month-to-month rental. Most importantly, the evidence did not show an end date -- there was no showing, nor could there be, of

12

a date when Carter would leave the Copper Lantern and return to his prior address.  The evidence was thus sufficient to show more than a "temporary sojourn," and it is entirely consistent with the purposes of the probation condition that Carter be required to notify his probation officer that he was now "living" at a different place.  See Becker, 71 Mass. App. Ct. at 88 (evidence defendant was a resident sufficient where he had been living in Massachusetts for over a month).  The judge did not err in finding that Carter changed his residence.

Order revoking probation and imposing sentence affirmed.

By the Court (Englander, Hershfang & Brennan, JJ.[3]),

Clerk

Entered:  February 25, 2025.

---

[3] The panelists are listed in order of seniority.