COMMONWEALTH *vs.* CHRISTOPHER GRAY.

No. 10-P-891.

Bristol. April 12, 2011. - August 15, 2011.

Present: COHEN, KATZMANN, & VUONO, JJ.

*Sex Offender Registration and Community Notification Act. Evidence,* Business record, Preliminary question.

At the trial of a criminal complaint charging the defendant, a sex offender subject to the registration requirements of G. L. c. 6, § 178F ½, with knowingly failing to provide notice of a change of address, in violation of G. L. c. 6, § 178H(*a*), the paucity of evidence from which to conclude that the defendant had changed his place of residence (even assuming that the trial judge properly admitted in evidence a "booking memo," which was prepared by a sheriff's office when the defendant was brought to a house of correction on an unrelated matter, and from which it could be inferred that the defendant acknowledged, as his address for some purpose, a different address from the one where the defendant was registered) required this court to reverse the judgment, set aside the verdict, and enter judgment for the defendant. [101-103]

COMPLAINT received and sworn to in the Fall River Division of the District Court Department on May 16, 2006.

The case was heard by *Christopher D. Welch,* J.

*Diana Cowhey* for the defendant.

*Tara Blackman,* Assistant District Attorney, for the Commonwealth.

COHEN, J. The defendant, a sex offender subject to the registration requirements of G. L. c. 6, § 178F ½, was convicted, after a District Court jury trial, of knowingly failing to provide notice of a change of address, in violation of G. L. c. 6, § 178H(*a*). On appeal, the defendant contends (1) it was error to admit a "booking memo," prepared by the Bristol County sheriff's office when he was brought to a house of correction on an unrelated matter, and bearing a different address from the one where he

was registered; and (2) his motion for a required finding of not guilty should have been allowed. We conclude that, even if the booking memo was properly admitted, the Commonwealth failed to meet its burden of proving that the defendant had changed his residence as required to establish a violation of § 178H(*a*). Accordingly, we reverse.

*The Commonwealth's evidence.* The Commonwealth's case consisted of the testimony of Detective Timothy Alvin of the Fall River police department, and various documents. Viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the evidence may be summarized as follows.

In 2001, the defendant was convicted of disseminating matter harmful to minors. On October 6, 2005, the Sex Offender Registry Board (SORB) sent out two letters: the first addressed to the defendant at 68 Manton Street, Fall River, informing him of his obligation to register with the local police as a level 2 offender; the second addressed to the Fall River police, informing them of the defendant's registration requirement and classification, and enclosing a sample response that they could use if presented with a sex offender registry request. The sample response listed the defendant's "[h]ome [a]ddress" as 68 Manton Street.

On December 2, 2005, the defendant, who was incarcerated and scheduled to be released the following day, signed a SORB form identifying an address on Sunset Hill, Fall River, as the address where he intended to live. However, four days later, on December 6, 2005, when he presented himself to the Fall River police to register, he gave the following information in response to the questions in the section pertaining to residency. Where asked to supply a permanent address, the defendant stated, "Homeless"; where asked to supply any temporary or out of State address, he answered, "N/A"; and where asked to supply a mailing address, he gave a post office box. At the bottom of the form, the defendant signed an acknowledgment that he knew and understood that he was to notify SORB or the police department at least ten days prior to "any *change in residence* . . ." (emphasis supplied).

On January 27, 2006, an individual obtained an abuse prevention order against the defendant. The order required the defendant

"to stay away from [her] residence . . . located at [the same address on Sunset Hill as given by the defendant on the SORB form], Sunset Hill, Fall River." Thereafter, on February 6, 2006, the defendant again presented himself to the police station, this time identifying both his permanent address and his mailing address as 68 Manton Street, Fall River. Again, he signed the acknowledgment at the bottom of the form.

Detective Alvin testified that, in late March, 2006, he was contacted by SORB and informed that the defendant's address should be deactivated because he was incarcerated. As a result, the detective contacted the house of correction. He learned that the defendant had come into their custody on March 24, 2006, and then was released after a court appearance on March 27, 2006. He also learned that, during the intake process at the house of correction, the defendant had, in the detective's words, "used the address [on] Sunset Hill." Because this was a different address from the one furnished by the defendant on February 6, Detective Alvin requested and received a copy of the booking memo.

The booking memo was admitted at trial without objection, even though defense counsel had moved in limine to exclude it. It is a printed form, with each request for data appearing in bold type, in lower case letters with initial capitals. The information filled in on the form also is printed, but it does not appear in bold, and with a few exceptions, it is in upper case letters. Where the form solicits an "Address:" the words "[street number] SUNSET HILL" are printed, and where the form solicits "City:" the words "FALL RIVER" are printed. At the top of the booking memo, in the right hand corner, there is a crooked, apparently handwritten line, and a handwritten "X." Immediately above the line, and beside the "X," is a signature, which Detective Alvin was able to identify as that of the defendant.

Detective Alvin could not supply any other information about the booking memo. He testified that he was not present when the form was completed and he did not know who inserted the information on the sheet or how it was obtained. He did not know, for example, whether any of the information had been entered into the system at some earlier time and computer generated. Other than his contacting the house of correction and

obtaining the booking memo, he conducted no investigation to determine where the defendant was living and whether he had actually changed his place of residence from 68 Manton Street to the address on Sunset Hill.

*Discussion.* The trial judge ruled that the booking memo was admissible either as a business record or as an admission by a party-opponent. However, as the defendant argues and the Commonwealth concedes, the booking memo could not be admitted as a business record, because it was not properly authenticated. No witness from the sheriff's office testified as to the factual, foundational requirements of G. L. c. 233, § 78, namely, that the booking memo "was made in good faith in the regular course of business and before the beginning of the . . . criminal proceeding . . . and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." G. L. c. 233, § 78, as appearing in St. 1954, c. 442, § 1. That a witness was required to have testified as to these factors in this case is confirmed by the statute's further requirement that "when such entry, writing or record is admitted in a criminal proceeding all questions of fact which must be determined by the court as the basis for the admissibility of the evidence involved shall be submitted to the jury . . . for its final determination."

The question remains whether the statements in the booking memo were properly admitted as admissions by a party opponent. To qualify as such in the circumstances presented, the information had to be shown to be either the defendant's own statements or statements as to which he had manifested an adoption or belief in its truth. See Mass.G.Evid. § 801(2)(A) & (B) (2011). See also Brodin & Avery, Massachusetts Evidence § 8.6.1, at 501-504 (8th ed. 2007). Whether a statement qualifies as an admission by a party opponent is a preliminary question of fact for the judge, to be decided by a preponderance of the evidence. See Mass. G. Evid. § 104(a) & note; Brodin & Avery, *supra* § 1.4.1. The judge's determination of this preliminary question of fact will be upheld if there is evidence to support it. See *Fauci* v. *Mulready*, 337 Mass. 532, 540 (1958).

Were it not for the signature appearing in the upper right

hand corner of the booking memo, there would have been no evidence to support a finding that the defendant made the statement concerning his address or manifested an adoption or belief in its truth. There was no evidence as to how the booking memo was prepared or the sources of information that were used. Notably, the defendant had given the Sunset Hill address as his intended address when he was released from custody in December, 2005, giving credence to the explanation that it may have been filled in by computer without any input or agreement from him.[1]

The defendant's signature is a significant added factor, however. Although the presence of the signature could have been found by the judge to be inconclusive given the oddly placed, handwritten signature line and the absence of any evidence or language in the form indicating that the defendant was asked to review the document and sign it to confirm its contents, it also could have been found to be some circumstantial evidence that the defendant had adopted the statements contained therein. See *Zucco* v. *Kane*, 439 Mass. 503, 508 (2003).

Even if the booking memo was an admission, however, the more fundamental question is what it proved. We recognize that the Commonwealth "need not exclude every reasonable hypothesis of innocence" since an inference "need not be necessary or inescapable," but only "reasonable and possible." *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991), quoting from *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). However, " '[i]t is not enough for the appellate court to find that there was some record evidence,

---

[1]The Commonwealth points to an unpublished memorandum and order of this court pursuant to our rule 1:28, in which it was concluded that "[t]he defendant's statement, as recorded on the booking sheet, was admissible as an admission by a party opponent . . . ." However, no factual context is given for this conclusion, and, when we consulted the briefs and record in that case, we discovered that the statement recorded on the booking sheet came in through the testimony of a police officer who was present at booking, remembered the booking sheet being generated, and explicitly testified that the statement (that the defendant was unemployed) would have been supplied by the defendant. This is a far different situation from the one presented here and well illustrates why our often conclusory decisions pursuant to rule 1:28 are not accorded precedential weight. See *Chace* v. *Curran*, 71 Mass. App. Ct. 258, 260 n.4 (2008).

however slight, to support each essential element of the offense.'
. . . Nor may a conviction rest upon the piling of inference
upon inference or conjecture and speculation." *Commonwealth
v. Armand*, 411 Mass. 167, 170 (1991).

We think that the most that could be inferred from the book-
ing memo was that the defendant acknowledged the Sunset Hill
address as his address for some purpose. The question to be
determined, however, was whether he had changed his place of
residence. See *Commonwealth v. Rosado*, 450 Mass. 657, 662-
663 (2008); *Commonwealth v. Bolling*, 72 Mass. App. Ct. 618,
623-625 (2008). Here, there was a paucity of evidence from
which to conclude that he had done so. As Detective Alvin
testified, apart from the police's learning of and obtaining the
booking memo, there was no investigation whatsoever to deter-
mine where the defendant had been residing.

In the end, the Commonwealth's case depended upon an in-
ference that the defendant's signature was an acknowledgment
that the Sunset Hill address was his address at the time of book-
ing, and a further inference that the use of this address meant
that the address on Sunset Hill (and not 68 Manton Street) was
now the defendant's actual residence. This reasoning is too at-
tenuated to support the defendant's conviction.

The judgment must be reversed, the verdict set aside, and
judgment entered for the defendant.

*So ordered.*