COMMONWEALTH *vs.* TRACY K. KATELEY.

Plymouth. December 5, 2011. - February 24, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Constitutional Law,* Sex offender, Parole. *Due Process of Law,* Sex offender, Parole. *Parole. Evidence,* Sex offender.

At the trial of a criminal complaint charging the defendant with failing to verify his sex offender registration information by refusing to provide certain secondary addresses, the evidence was insufficient to prove that the defendant had stayed at an address other than the one he provided for either fourteen days in a calendar year or for four or more days in a month; further, the evidence was insufficient to prove that the defendant knowingly failed to verify his potential address in Oregon, where the defendant informed the sex offender registry board, but not the local police department, of his intention to move to Oregon. [581-583]

This court concluded that a criminal complaint that charged the defendant with failing to verify his sex offender registration information by refusing to provide certain secondary addresses did not meet the requirements of art. 12 of the Massachusetts Declaration of Rights, where the complaint charged a violation of a statute that was not the same as an alleged predicate offense or condition that could result in community parole supervision for life. [583-585]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on December 11, 2007.

The case was heard by *Julie J. Bernard,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jason Benzaken* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

*Beth L. Eisenberg, Radha Natarajan, & Larni S. Levy,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, C.J. After a jury-waived trial in the District Court, the defendant was convicted of failing to verify his sex offender

registration information by refusing to provide certain secondary addresses, and was sentenced to lifetime parole. See G. L. c. 6, § 178H. The Appeals Court, in an unpublished memorandum and order issued pursuant to its rule 1:28, affirmed. *Commonwealth* v. *Kateley*, 78 Mass. App. Ct. 1115 (2010). We granted the defendant's application for further appellate review. The defendant argues that the judge erred in denying his motions for a required finding of not guilty because there was insufficient evidence to convict him. He also makes several arguments concerning whether the judge properly imposed lifetime parole and whether the criminal complaint provided him with proper notice, including a claim that his constitutional rights were violated because the penalty of lifetime parole was not properly alleged in the complaint. Because we conclude that there was insufficient evidence to convict the defendant, we reverse. In light of this conclusion, the other issues the defendant raises are moot. However, because there appears to be some confusion concerning whether the complaint properly alleged that the defendant could face lifetime parole, we address it briefly.

*Statutory scheme.* "The Legislature adopted G. L. c. 6, §§ 178C-178O, an extensive statutory registration scheme for sex offenders, in order to protect the public from 'the danger of recidivism posed by sex offenders' and to aid law enforcement officials in protecting their communities by providing them with information. . . . A convicted sex offender must register with the [sex offender registry] board [(board), which then] determines the offender's classification level." *Commonwealth* v. *Rosado*, 450 Mass. 657, 659-660 (2008), quoting *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 769 (2006). See G. L. c. 6, §§ 178E, 178K (2).

There are three classification levels. *Commonwealth* v. *Rosado, supra* at 660. "Level two and level three sex offenders must verify their registration information with the board annually in person at the local police department in the city or town where they live." *Id.*, citing G. L. c. 6, § 178F ½. Relevant here is that the registration information must include the offender's home address and any "secondary addresses." G. L. c. 6, § 178F. "Secondary addresses" are defined as where an offender "lives, abides, lodges, or resides" for fourteen days or

more in a calendar year other than the "sex offender's primary address," or for four or more "consecutive or nonconsecutive days in any month [other than the] sex offender's permanent address." G. L. c. 6, § 178C.

In addition, pursuant to G. L. c. 6, § 178E (*i*), an offender intending to move out of the Commonwealth must notify the board in writing no later than ten days before such move. General Laws c. 6, § 178F ½, first par., modifies these provisions by requiring a level two or level three sex offender to notify the local police department in person.

Pursuant to G. L. c. 6, § 178H (*a*), an offender may not knowingly fail to register, verify registration information, or provide notice of a change of address; furthermore, an offender may not knowingly provide false information. Any agency that has custody of a sex offender must inform the offender, before his release, of the duty to register. G. L. c. 6, § 178E (*a*). The penalty for violating the registration requirement depends on the offender's classification level, the underlying sex offense, or whether the conviction is a second and subsequent conviction. G. L. c. 6, § 178H (*a*). Relevant here is that a sex offender who is convicted of violating the statute and "who has been adjudicated or convicted of any of the offenses set forth in [§§] 13B, 13F, 22A, 23, 24B and 26 of [G. L. c.] 265 or . . . a like violation of the laws of another [S]tate . . . shall . . . be punished by a term of community parole supervision for life." G. L. c. 6, § 178H (*a*) (1), second par., as amended through St. 2006, c. 139, § 26.

*Facts and procedure.* The Commonwealth's case was based, in relevant part, on documents admitted in evidence and the testimony of a Brockton police detective, who was the sex offender registration coordinator for the Brockton police department.

In 1998, the defendant pleaded guilty to sex offenses in Oregon. In 2006, for reasons not pertinent here, the defendant had been in the custody of the Norfolk County Correctional Center. On his release on September 1, 2006, the defendant signed a form acknowledging that he had been informed of his duty to register. G. L. c. 6, § 178E (*a*). That form stated that an offender had the duty to provide a ten-day notice to the *board* if he planned to move. That day, the defendant filled out his initial sex offender registration form at the Brockton

police department. At that time, he checked the box indicating that he was a level two sex offender, listed an apartment at 167 Newbury Street as both his permanent and temporary address, and provided a telephone number. He listed his daughter as his closest living relative and indicated that her address also was the apartment at 167 Newbury Street.

The detective made several unsuccessful attempts to verify the defendant's address by visiting the apartment and knocking on the door. On May 24, 2007, he attempted to telephone the defendant using the number the defendant had provided, but also was unsuccessful. The detective then went to the apartment; the defendant was there. He asked the defendant for an accurate telephone number and to verify his address. The defendant provided a different telephone number and stated that he stayed at the apartment. He also said that he "stay[ed] elsewhere" but refused to tell the detective the other address.

On May 29, the detective tried to telephone the defendant using the new number, but again was unsuccessful. On May 30, the detective returned to the apartment. The defendant was not there, but the defendant's daughter and infant granddaughter were. The detective was allowed to enter the apartment. He testified at trial that it was a one-bedroom apartment. He also testified that it appeared to him that the defendant did not live there.

On June 18, the detective met with the defendant and asked again for his other address. The defendant refused to provide it. The detective did not have any other specific information that the defendant stayed elsewhere; he had not seen the defendant elsewhere; and he did not conduct any extended surveillance or any other investigation to determine whether the defendant had a secondary address within the meaning of the statute.

The documents show that the defendant appeared and complied with the annual registration requirement on July 10, 2007. On that date, the form shows a typewritten X in the box indicating that the defendant was a level two sex offender; all other information was written by hand. The box indicating that the form was an annual registration was marked. The form appears to bear the detective's signature as a witness.[1]

---

[1]The date the defendant complied with the annual registration requirement is important to our analysis because, as discussed *infra*, the Commonwealth

The detective testified and documents reflect that, on July 17, the defendant returned to the Brockton police department and filled out another sex offender registration form indicating that he lived at 167 Newbury Street. The box on the form indicating that it was an annual registration was not marked, and for the first time, the defendant checked the box indicating that he was a registered sex offender "in [a]nother State" and wrote the word "Mass" in the line asking which State. At that time, his picture and fingerprints were taken. The detective stated that the defendant said he would not say whether he was living somewhere else.[2]

On July 17, the defendant also sent a letter to the board stating, "[D]ue to a family situation I have to immediately return to Oregon." It stated that future correspondence from the board could be sent to him in care of what appears to be a family member, at a specific address in Oregon.

The board sent a copy of the defendant's letter to the Brockton police department in August, 2007. See G. L. c. 6, § 178E *(i)* (on receipt of notice of offender's intention to move out of State, board shall transmit notice to appropriate police department). However, because the detective did not learn of it until January, 2008, he returned to the apartment in December, 2007. The tenant who answered the door did not know the defendant or his family. The detective applied for an arrest warrant, charging the defendant with failure to register. The defendant was arrested in Brockton on August 29, 2008.

At trial, the defendant called three witnesses. His daughter testified that she had a two-bedroom apartment and that the defendant lived in the apartment, slept on a couch in the living room, and had "[t]wo small duffel bags" of belongings in the closet near the front entrance to the apartment. She stated that she had shown the bags to the detective. The daughter also testified that she moved out of the apartment in November, 2007. The defendant's girl friend testified that the defendant possessed few

hinges some of its argument on the assertion that the annual registration occurred on July 17, 2007.

[2]The detective characterized the defendant's behavior as "confrontational" and "uncooperative" when he refused to provide a second address on June 18 and July 17, 2007.

belongings because, before he moved into the apartment, the pair had traveled around the country while living in her truck. A former neighbor and friend of the defendant's daughter testified to details that supported her statement that the defendant lived at the apartment.

In its closing argument, the Commonwealth argued that, on June 18, the defendant admitted that he lived elsewhere, and therefore he had the obligation to report his secondary address. Concerning July 17, the Commonwealth argued that the defendant also did not list any secondary address or an out-of-State address in Oregon. The Commonwealth argued that these failures on the part of the defendant constituted a failure to verify his address and failure to provide accurate information.

The judge found that, on June 18 and July 17, the defendant knowingly failed to verify registration information. Specifically, she found that, although the defendant lived at the apartment, he failed to "verify any other potential residence . . . or places that he frequents." The judge noted that when the defendant sent the letter to the board informing them that he was moving to Oregon, he knew he had an obligation to provide ten-day notice to the board of his intention to do so. Nevertheless, she did not find him guilty on that ground, only for failing to register.[3] Although the judge's recitation of her findings is not entirely clear, we infer that she made her findings concerning the June 18 and July 17 incidents consonant with the Commonwealth's closing argument. That is, on June 18 the defendant had a secondary address in Massachusetts that he did not report, and on July 17

---

[3]The judge found as follows:

"I find, given the credible testimony that was presented . . . the Commonwealth has met its burden beyond a reasonable doubt that on both June 18 and July 17, 2007, the defendant knowingly failed to verify registration information. There was evidence presented and I find credible from the witnesses, he was living at [the apartment], but he had an obligation to verify any other potential residence, which he did not, or places that he frequents. That's an obligation as a sex offender. And it's also clear to me, given that these forms were dated the same date and that he wrote that letter [concerning moving to Oregon] to the [board] that he knew he had the intention to leave the [Commonwealth] and he had an obligation to report that. But I'm finding him guilty of failing to register — failing to knowingly verify registration information on both June 18 and July 17, 2007."

he had a secondary address in Massachusetts and an address in Oregon that he did not report. It is important to note that the judge implicitly rejected the Commonwealth's argument that, in failing to report these addresses, the defendant also provided false information to the board.

*Discussion.* 1. The defendant argues that there is insufficient evidence to convict him of failing to verify his registration information. We agree.

We begin by noting that the defendant makes several arguments concerning the interpretation of the statutory language, including whether the judge erred when she stated that there is a duty under the statute to verify "any other potential residence" or "places that [an offender] frequents"; whether the statute requires anything more than an annual reporting of information and, therefore, there was no duty to verify an address on June 18 (or July 17); and whether the failure to verify registration information prong of the statute encompasses the duty to report a secondary or intended address. For purposes of our analysis, we will assume, without deciding, that the judge's interpretation of the statute was correct. In addition, we do not address arguments concerning whether the defendant provided the requisite ten-day notice of his intent to move because the judge explicitly did not find him guilty of violating that statutory provision. See note 3, *supra.*

Under the statutory scheme, in order for the Commonwealth to prove beyond a reasonable doubt that the defendant failed to provide a secondary address, it had to show that the defendant stayed at an address other than the apartment for either fourteen days in a calendar year or for four or more days in a month. The only evidence that the defendant may have had a secondary address were his statements to the detective that he stayed "elsewhere." There was no investigation that could have established a second address or the number of days he stayed there.[4]

The Commonwealth argues that the defendant's statements

[4]The Commonwealth called no other witness to attest to any alternate address. The detective testified that on July 17 he spoke on the telephone to the defendant's girl friend and that she would not provide any information about where they were living. On cross-examination, he stated that he did not recall whether she denied that the defendant was living with her or stayed with her. The defendant's girl friend testified for the defense that the defendant never

are corroborated by the fact that he "apparently" gave the detective false telephone numbers and by "the appearance that he did not live at the [apartment]." We are not persuaded by the latter argument, because the judge found that the defendant lived at the apartment. See note 3, *supra*. Moreover, the telephone numbers are not evidence of the critical issue: how often the defendant stayed elsewhere. Therefore, even assuming, arguendo, that the telephone numbers were a kind of admission in the same way that his statements were, the "fundamental question is what [they] proved." *Commonwealth* v. *Gray*, 80 Mass. App. Ct. 98, 102 (2011). We conclude that the defendant's statements and the telephone numbers are insufficient evidence to establish beyond a reasonable doubt that he failed to register a secondary address within the specific requirements of the statute. "[A] conviction [may not] rest upon the piling of inference upon inference or conjecture and speculation." *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991).

Concerning the failure to list the Oregon address on his registration form on July 17, we begin by rejecting the Commonwealth's assertion that the defendant fulfilled his annual obligation to register and sent his letter to the board on the same day, July 17. As discussed, the documents show that the defendant fulfilled his annual registration duty on July 10. Although he does not list an Oregon address on his form on July 17, and did not inform the Brockton police department of his move to Oregon, he did check off the box listing Massachusetts as another State where he was a registered sex offender. Moreover, there was no testimony contradicting that the defendant was living at his daughter's apartment when he went to the Brockton police station on July 17. The only evidence concerning the exact day he moved to Oregon was the daughter's testimony that he was in Oregon at the end of July, "[a]round the 20 something," and the sex offender registration form the defendant subsequently filled out in Oregon indicating that he had arrived on July 21.

In addition, although G. L. c. 6, § 178F ½, first par., states that a level two sex offender must inform the local police department in person of an intention to move out of State, no form

stayed at her house. She explained that she lived with her mother, who would never allow the defendant to stay overnight with her. The girl friend testified that, occasionally, she would sleep at the apartment instead.

admitted in evidence (including the forms signed by the defendant) indicates that only the local police department must be informed. Instead, the document from the Norfolk correctional facility that the defendant signed on September 1, 2006, acknowledging that he was informed of his duty to register, stated an offender must inform the *board* of an intention to move. The other forms stated that an offender must inform the board *or* the police department. The letter from the board states that the board "and/or the Police Department (level 2 and 3 offenders)" must be notified which, we conclude, makes the obligation less than clear and reasonably could be read to mean that reporting to the board was sufficient. Given these facts, we cannot say that the Commonwealth proved beyond a reasonable doubt that the defendant *knowingly* failed to verify his potential address in Oregon by informing the board rather than the police department of his intention to move to Oregon. The department has an obligation to inform sex offenders of a duty to give notice of an intent to move. G. L. c. 6, §§ 178E (*a*), 178F ¹/₂. We suggest that the forms and letter from the board be revised to reflect clearly and accurately how an offender should fulfil that duty.

The judge erred in denying the defendant's motions for a required finding of not guilty.

2. Under the statutory scheme, an offender who violates the registration requirement could face community parole supervision for life (CPSL). G. L. c. 6, § 178H (*a*). The defendant argues that the complaint was deficient under art. 12 of the Massachusetts Declaration of Rights because it failed to allege that the defendant was a level two sex offender, and that he had been convicted of one of the requisite offenses that could result in CPSL. Although this issue is now moot, we exercise our discretion to consider it because it is an issue of importance. *Commonwealth* v. *McCulloch*, 450 Mass. 483, 486 (2008), and cases cited. There seemingly is some uncertainty whether the art. 12 analysis of enhanced penalty set forth in *Commonwealth* v. *Pagan*, 445 Mass. 161, 169-170 (2005) (*Pagan*), applies to violations of the registration requirement.

The Legislature intended that CPSL serve as an "enhanced penalty for sex offenders." *Commonwealth* v. *Renderos*, 440 Mass. 422, 429 (2003). We have held that, under art. 12, "[i]f a defendant is made susceptible to a prescribed statutorily en-

hanced penalty because of a former conviction, the predicate of-
fense must be alleged in the complaint or indictment [and proved]."
*Pagan, supra* at 169. See *Ring* v. *Arizona,* 536 U.S. 584, 600
(2002), quoting *Jones* v. *United States,* 526 U.S. 227, 243 n.6
(1999) ("[U]nder the Due Process Clause . . . any fact [other
than prior conviction] that increases the maximum penalty for a
crime must be charged in an indictment, submitted to a jury, and
proven beyond a reasonable doubt").

*Pagan* concerned CPSL for certain qualifying repeat sex
offenders. *Pagan, supra* at 165-167. See G. L. c. 265, § 45;
G. L. c. 275, § 18.[5] We conclude, and the parties do not dis-
pute, that the same art. 12 analysis is implicated here because,
as discussed in *Pagan, supra* at 168-169, the enhanced penalty of
CPSL is mandatory. Accordingly, under G. L. c. 6, § 178H (*a*),
the predicate condition or offense for imposing CPSL (here, sex
offender classification or prior conviction of certain sex offenses)
must be alleged in the charging document.

The complaint issued against the defendant in this case first
tracked the language of G. L. c. 6, § 178H (*a*), by setting forth
the four ways an offender could be guilty of failing to register.[6]
Concerning the potential punishment for failing to register, the
complaint stated, in relevant part:

> "(PENALTY: . . . Lifetime community parole supervi-
> sion is also required upon conviction *if*: [1] defendant has
> been categorized as a level [two] or [three] sex offender,
> or [2] defendant's underlying offense was G. L. c. 265,
> §§ 13B, 13F, 22A, 23, 24B or 26 . . . or a like offense in
> another jurisdiction . . .)" (emphasis added).

See G. L. c. 6, § 178H (*a*) (1), second par.; G. L. c. 6, § 178H
(*a*) (3).[7]

The Commonwealth argues that the language contained in the

---

[5]In *Commonwealth* v. *Pagan,* 445 Mass. 161, 172-173 (2005), we held that
G. L. c. 275, § 18, was unconstitutionally vague.

[6]The complaint stated: "On December 10, 2007, being a registered sex of-
fender, as defined in G. L. c. 6, § 178C, who was required to register pursuant
to G. L. c. 6, §§ 178C-178P: (1) did knowingly fail to register; or (2) did
knowingly fail to verify registration information; or (3) did knowingly fail to
provide notice of a change of address; or (4) did knowingly provide false
information, in violation of G. L. c. 6, § 178H (*a*)."

[7]The parties argue whether the language of G. L. c. 6, § 178H (*a*) (3),

parenthetical properly alleges requisite "facts": that if the defendant is a level two sex offender or his underlying offenses in Oregon were "like offense[s]" within the meaning of the statute, he could face CPSL.

The language of the complaint tracks the statutory provision but does not specifically allege that *this* defendant *is* a level two sex offender or identify the "like offense[s]" committed in Oregon that could result in CPSL. In *Commonwealth* v. *Fernandes*, 430 Mass. 517, 518, 522 (1999), indictments against two defendants as "repeat offenders" were attached to indictments for distributing cocaine and stated that one defendant had been convicted of "a similar offense" and that the other defendant had been convicted of "manufacturing, distributing, [or] dispensing . . . a controlled substance." *Id.* at 524-527 (Appendices A and B). We concluded that the repeat offender indictments were sufficient because the defendants only had to look to the indictment charging distributing cocaine to understand the drug offense that brought them under the repeat offender provision of the statute. *Id.* at 522. Here, however, the complaint against the defendant charged a violation of the duty to register, a statute that is not the same as the alleged predicate offense or condition (here, prior conviction of certain sex offenses or sex offender classification) that could result in CPSL. Therefore, we conclude that the complaint issued against the defendant in this case did not meet the requirements of art. 12.[8] See generally *id.* at 521-522.

*Judgment reversed.*

*Judgment for the defendant.*

---

stating that any level two or level three sex offender who is convicted of violating the obligation to register "shall . . . be subject to community parole supervision for life [CPSL]" means that CPSL is mandatory rather than permissive. The basis for the argument is that the other two provisions, G. L. c. 6, § 178H (*a*) (1) and (2), state that an offender "shall . . . be punished by a term of [CPSL]." We need not address this issue here. We assume, without deciding, that the provision means mandatory CPSL.

[8]Under the Federal and State Constitutions, the fact finder must make specific findings concerning whether the defendant fell under the enhanced penalty portion of the statute. See *Ring* v. *Arizona*, 536 U.S. 584, 600 (2002), quoting *Jones* v. *United States*, 526 U.S. 227, 243 n.6 (1999); *Commonwealth* v. *Pagan*, *supra* at 169. We note that, here, there were no explicit findings of fact made by the judge before CPSL was imposed on the defendant.