Commonwealth *v.* Arce.

## Commonwealth *vs.* Jose Armando Arce.

Middlesex. November 5, 2013. - February 27, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act.*

Discussion of the statutory obligation imposed on a sex offender to notify the police of a change in his home address or of the acquisition of a secondary address. [332-333]

At the trial of a criminal complaint charging the defendant with failing to register as a sex offender, the Commonwealth failed to meet its burden of proving either that the defendant provided false information as to his homeless status or that his aunt's apartment had become his home or secondary residence such that he had an obligation to notify the police of a change of address. [333-335]

Complaint received and sworn to in the Lowell Division of the District Court Department on August 16, 2010.

The case was heard by *Lynne C. Rooney*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Lois J. Martin* for the defendant.

*Laura Kirshenbaum*, Assistant District Attorney, for the Commonwealth.

Cordy, J. On August 3, 2006, the defendant pleaded guilty to charges of assault and battery, indecent assault and battery on a child under fourteen years of age, and accosting a person of the opposite sex, and was required to register as a level three sex offender. On July 20, 2010, he was arrested and subsequently charged with violating G. L. c. 6, § 178H (*a*) (1) (failing to register, failing to verify registration information, failing to provide notice of change of address, or providing false information). At the defendant's jury-waived trial, the Commonwealth alleged that the defendant, who registered on July 12, 2010, as homeless, failed to notify police that he had begun

living in an apartment with his aunt, Alma Carrasquillo (Alma), either as his home or as his secondary residence, and that he knowingly provided false information when he registered as homeless eight days before being arrested. On May 3, 2011, the defendant was found guilty and sentenced to one year in a house of correction and to community parole supervision for life (CPSL).

On appeal, the defendant argues that the Commonwealth did not meet its burden of proving either that he provided false information as to his homeless status on July 12, 2010, or that his aunt's apartment had become either his home or secondary residence, such that he had an obligation to notify the police of a change of address. He further argues that the imposition of CPSL violates his constitutional right to be free from cruel and unusual punishments under the Eighth Amendment to the United States Constitution and art. 26 of the Declaration of Rights of the Massachusetts Constitution.

Because we conclude that the evidence was insufficient, we vacate his conviction and order entry of a judgment of not guilty.

1. *Background.* On being classified as a level three sex offender, the defendant was required to register annually with the Lowell police department and the Sex Offender Registry Board (board). At the time the defendant initially registered, G. L. c. 6, § 178F ½, required any homeless sex offender to verify his registration information with the local police department every forty-five days.[1]

In July, 2008, the defendant properly filled out and filed a registration form indicating that his current address was 87 Westford Street in Lowell. He also indicated that his aunt, Alma, lived at 26 Caddell Avenue, Lowell, and was his closest living relative. On July 12, 2010, the defendant appeared at the Lowell police department and registered as homeless, indicating that his mailing address was Alma's new address at 270 Wilder Street, Lowell.[2] He did not list a "secondary address."[3] He also

---

[1]The events in this case occurred before the enactment of St. 2010, c. 256, § 41, which now requires those who register as homeless to verify their registration every thirty days.

[2]The defendant testified that, at the time of the offense, he was receiving Social Security disability checks at 270 Wilder Street.

[3]General Laws c. 6, § 178C, defines "[s]econdary address[]" as "all places

signed a registration information form indicating that he under-stood that he must notify the police of any change of address.

On July 20, 2010, eight days after the defendant had registered as homeless, Lowell police Detective Carlos Mer-cado went to Alma's address in an attempt to locate the defend-ant. After a brief search, Mercado saw the defendant walking up the driveway to the apartment complex with a bicycle.

Mercado testified that he informed the defendant that he was in violation of his sex offender registration obligations, and that the defendant disagreed, telling Mercado, "I'm doing everything I'm supposed to. I'm coming in every forty-five days. I'm do-ing everything right. I didn't do anything wrong." Mercado explained to the defendant that he was in violation and that he was obliged to notify the board if he had "a secondary address or a permanent address."

According to Mercado, the defendant "admitted the fact that he was staying there, and he was waiting to get an apartment." He told Mercado that "as soon as he got an apartment, he was going to leave that location and report the new address."

After placing the defendant in custody, Mercado spoke with George Flaris, the manager of a real estate office that owned a number of rental properties in Lowell, including the fourteen-unit apartment complex at 270 Wilder Street.[4] Flaris testified that he was aware that Alma and her nephew, Jeremy, lived in unit 8 at 270 Wilder Street, and that the defendant was not a tenant. In July, 2010, he estimated that he saw the defendant on the property of the apartment complex during the day "almost every day." The only conversation he had with the defendant was to tell him to "leave the property and never come back."

The defendant testified that on July 12, 2010, he was living at the Lowell Transitional Living Center.[5] He explained that he

where a sex offender lives, abides, lodges, or resides for a period of [fourteen] or more days in the aggregate during any calendar year and which is not a sex offender's primary address; or a place where a sex offender routinely lives, abides, lodges, or resides for a period of [four] or more consecutive or nonconsecu-tive days in any month and which is not a sex offender's permanent address."

[4]The complex consisted of eight townhouses and a six-unit apartment building.

[5]By the time of the trial, the Lowell Transitional Living Center had changed its name to the Middlesex Shelter in Lowell.

received Social Security disability insurance, and the payment checks were delivered to his aunt's address at 270 Wilder Street at his request.[6] He also explained that his aunt helped him cash his checks and manage the limited funds he received.

The judge found that the defendant had failed to register as a sex offender, but did not make specific findings regarding whether she reached her decision based on one or both of the theories presented by the Commonwealth. She sentenced him to one year in the house of correction, with community parole supervision for life.

2. *Discussion.* a. *Legal framework.* A defendant who is required to register as a sex offender fails to do so if he knowingly fails to provide notice of a change of address, or knowingly provides false information. G. L. c. 6, § 178H (*a*). "Level two and level three sex offenders must verify their registration information with the board annually in person at the local police department in the city or town where they live . . . ." *Commonwealth* v. *Rosado*, 450 Mass. 657, 660 (2008), citing G. L. c. 6, § 178F ¹/₂. As noted, sex offenders who are homeless were required to verify their registration in person at the police station every forty-five days. Registration information "must include the offender's home address and any 'secondary addresses.' " *Commonwealth* v. *Kateley*, 461 Mass. 575, 576 (2012), quoting G. L. c. 6, § 178F. In order to prove that a sex offender failed to comply with the change of address requirement, the Commonwealth must prove that the sex offender changed his "home address" or "secondary address" without notifying the local police. G. L. c. 6, §§ 178E (*h*), 178F ¹/₂, 178H (*a*).

A defendant's "home address" is his primary place of residence. *Commonwealth* v. *Bolling*, 72 Mass. App. Ct. 618, 624-625 (2008). A "[s]econdary address[]" is defined as "all places where a sex offender lives, abides, lodges, or resides for a period of [fourteen] or more days in the aggregate during any calendar year and which is not a sex offender's primary address; or a place where a sex offender routinely lives, abides, lodges, or resides for a period of [four] or more consecutive or

---

[6]There was no testimony regarding how often the checks arrived at Alma's apartment.

nonconsecutive days in any month and which is not a sex offender's permanent address." G. L. c. 6, § 178C. Here, "in order for the Commonwealth to prove beyond a reasonable doubt that the defendant failed to notify the police of a change in his home address, or the acquisition of a secondary address, it had to prove, at a minimum, that the defendant stayed at an address other than [the Lowell Transitional Living Center] for either fourteen days in a calendar year or for four or more days in a month." *Kateley*, 461 Mass. at 581.

The Legislature did not define what constitutes "living," "abiding," lodging," or "residing," so we consider the statute using the plain and ordinary meaning of the words. *Olmstead* v. *Department of Telecomm. & Cable*, 466 Mass. 582, 588 (2013). Webster's Third New International Dictionary 1323 (1993) defines the word "live" as "to occupy a home: dwell, reside." "Reside" is defined as "to dwell permanently or continuously: have a settled abode for a time: have one's residence or domicile." *Id.* at 1931. "Lodge" is defined as "to occupy a place temporarily: stay overnight." *Id.* at 1329. "Abide" is defined as "to continue in a place: have one's abode: dwell." *Id.* at 3. Therefore, under the broadest definition afforded by the statute, the Commonwealth must show that the defendant "lodged" at the apartment by "stay[ing] overnight" for four days in July, 2010.

b. *Sufficiency of the evidence.* In determining whether the evidence was sufficient to survive a motion for a required finding, we determine whether, after viewing the evidence in the light most favorable to the Commonwealth, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). Circumstantial evidence may suffice to meet the Commonwealth's burden of establishing guilt. *Commonwealth* v. *Nolin*, 448 Mass. 207, 215 (2007). An inference drawn from that evidence "need only be reasonable and possible; it need not be necessary or inescapable." *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989), quoting *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977).

It is uncontested that the defendant did not notify the police

of any change of address in July, 2010. Thus, the questions are first, whether the evidence sufficed to show that on July 12, 2010, when the defendant registered as homeless he in fact was residing at 270 Wilder Street, and second, whether the defendant's residency situation changed prior to his arrest on July 20, 2010, such that he acquired either a primary or secondary address at 270 Wilder Street that he failed to report.[7]

With respect to the first question, there was scant evidence that on July 12, 2010, he was actually residing at 270 Wilder Street and not homeless. Mercado testified that on July 20, the defendant told him that he "was staying" at his aunt's apartment until he could find another apartment. But there was no evidence of how long he had been staying there and, specifically, whether he had begun staying there before July 12, 2010. Flaris, the manager of the real estate office, testified that he had seen the defendant on the apartment complex property "almost every day" (during the day) during the month of July, but that is perfectly consistent with the defendant's July 12 registration listing of 270 Wilder Street as his mailing address (and his receipt of Social Security disability checks there) and of Alma as his closest relative.

In order for the Commonwealth to prove beyond a reasonable doubt that 270 Wilder Street was the defendant's "secondary address," it had to show that the defendant "lodged" there for either fourteen days in a calendar year or for four or more days in a month. Again, the only evidence that the defendant had a secondary address was his admission that he was "staying" at the apartment, and Flaris's testimony that he saw the defendant on the apartment complex property during the day, "almost every day" in July, 2010. The fact that the defendant was, by

---

[7]It is unclear whether the judge found that the defendant was using Alma's apartment as his "home" (or "primary") address or as his "secondary address," and indeed the Commonwealth argues both. However, "[i]t is apparent that, within the statutory scheme, an offender's 'home address' denotes some greater degree of permanence, and a greater frequency of residence, than the transitory (albeit 'routine') level of occupancy at a location for four or fewer nights in a month." *Commonwealth* v. *Bolling*, 72 Mass. App Ct. 618, 624 (2008). Thus, where we determine that the evidence was insufficient to show that 270 Wilder Street was the defendant's secondary address, it was insufficient to show that he was staying there with the permanence necessary to render it his primary address.

his own admission, "staying" at the apartment does not, standing alone, meet the Commonwealth's burden of proof of showing that he had lodged there for the amount of time proscribed by the statute, where he did not admit how long he had been "staying" there. See *Kateley*, 461 Mass. at 581 (evidence insufficient to show secondary address where only evidence was defendant's admission that he occasionally "stayed 'elsewhere' "). Further, there was no evidence that the defendant had spent even a single night at the apartment. "There was no investigation that could have established a second address or the number of days he stayed there." *Id.* Simply put, without evidence suggesting that he was "staying" there with any kind of permanence, at least four nights in a month, the defendant's admission that he had been "staying" there was insufficient to prove that he had "lodged" there as required by the statute. That the defendant was often seen during the day on the property of his aunt's apartment complex does not mean that he "lodged" there for the amount of time required for it to qualify as a secondary address. Thus, the Commonwealth did not meet its burden of showing that the defendant changed his primary address or acquired a secondary address, and as such could not show that he failed to inform police of a change of address. See *Bolling*, 72 Mass. App. Ct. at 625-626 (evidence insufficient to show secondary address where evidence established defendant spent, at most, three nights at address in month). Therefore, we vacate the defendant's conviction and remand the matter to the District Court for entry of a judgment of not guilty.[8]

*So ordered.*

---

[8]Because we conclude that the evidence was insufficient to support the underlying conviction, we do not reach the defendant's constitutional challenge to his sentence of community parole supervision for life.