Following a jury trial in the Superior Court, the defendant was convicted of armed robbery and assault and battery.[2] On appeal, he claims that (1) his pretrial motion to suppress out-of-court photographic identifications of him should have been allowed, (2) the evidence was insufficient to sustain his convictions, and (3) he was deprived of the effective assistance of counsel. We affirm.
1. Motion to suppress. Before trial, the defendant moved to suppress out-of-court identifications of him by three eyewitnesses: James Randall, Christopher Hebert, and Jeffrey Goodrich. Following an evidentiary hearing at which the three eyewitnesses and Springfield police Officer David Robillard testified, the judge made findings on the record which we summarize as follows.
On December 26, 2013, a robbery occurred at the Darker Image Tanning Salon. The tanning salon, located on Island Pond Road in Springfield, shares a building with a business called Tattoo Royale. Randall, Hebert, and Goodrich were employees of Tattoo Royale. Immediately after the robbery, Christa Carrier, who worked at the tanning salon and who was the victim of the robbery, came running into Tattoo Royale crying and saying that she had been robbed at knifepoint. The three men ran into the tanning salon and then outside, where "they saw a van driving from behind the premises." The van was traveling at a high rate of speed, and Randall had to jump out of the way to avoid being hit by it. Goodrich observed that "the driver had a look on his face that made [Goodrich] think that something was terribly wrong." The three men were able to see the driver for anywhere from two to five seconds.
The police responded to the premises and spoke with Randall, Hebert, and Goodrich. "The thrust of that conversation had to do with the car."[3] "Very little was said about the description of the driver," except that he was a white male with a scruffy beard. Later that night, Randall went to the Springfield police department to look at a photographic array. The identification procedure was conducted in a manner that complied with the protocol set forth by the Supreme Judicial Court in Commonwealth v. Silva-Santiago, 453 Mass. 782, 797-798 (2009).[4] Randall was shown eight photographs, including the defendant's, in sequential order. All of the individuals were similar in appearance.[5] Randall selected the defendant's picture and stated that he was eighty percent sure that he was the driver of the van. Two days later, the same photographs were shown to Goodrich and Hebert at Tattoo Royale. Goodrich and Hebert were given the same protocol as was given to Randall. They were shown the photographs separately, and neither one was informed whether the other had made an identification. Goodrich viewed the photographs in the array simultaneously, selected a picture of the defendant, and said he was one hundred percent sure "that this is the guy I saw." After viewing the photographs simultaneously, Hebert also selected the defendant's photograph and stated that he was eighty percent sure the defendant was the person he saw driving the van.
The judge found that the photographic array was fair and that the police did nothing that could be construed as overly suggestive. He found that Randall, Hebert, and Goodrich selected the defendant's photograph based upon their "independent memory of what they observed at the time of the event in question." The judge then concluded that the defendant had not met his burden of proving that the identification procedures employed were so unnecessarily suggestive and conducive to irreparable mistaken identification so as to deny the defendant due process of law, see Silva-Santiago, supra at 795-796, and he denied the motion to suppress.
On appeal, the defendant argues that the judge erroneously concluded that the array was fair and that the identification procedures employed by the Springfield police were not unduly suggestive. He claims that his photograph was "unduly emphasized" because the other individuals depicted in the array did not look enough like him. Relying on (1) the fact that the same police officer who created the array conducted the identification procedures with Hebert and Goodrich, and (2) the absence of a finding regarding the lack of a double-blind procedure, the defendant argues that the identification procedure was unduly suggestive. The defendant also claims that the identification procedures involving Hebert and Goodrich were unduly suggestive because the photographs were shown to them simultaneously.
"When reviewing a motion to suppress evidence, we adopt the motion judge's subsidiary findings of fact absent clear error, but we independently determine the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004).
We discern no error. The men depicted in the array possessed reasonably similar features and characteristics to the defendant, including similar facial hair, see Silva-Santiago, supra at 795, and the identification procedure largely complied with the protocol set forth in Silva-Santiago, supra at 797-798. The judge's failure to make findings regarding the absence of a double-blind procedure is inconsequential where, as here, "there was no evidence that the [officer] who presented the photographic arrays signaled a particular response to, or otherwise attempted to influence, any of the eyewitnesses." Id. at 797. And, the fact that Hebert and Goodrich were shown the photographs simultaneously does not require suppression. See id. at 798-799 ("[T]he choice of a simultaneous rather than a sequential display of photographs shall go solely to the weight of the identification, not to its admissibility"); Commonwealth v. Thomas, 476 Mass. 451, 464 (2017) (same).
2. Sufficiency of the evidence. At trial, Carrier testified that she was robbed by a skinny, tall, white male with a beard. The man entered the tanning salon, placed a knife on the counter, and demanded money from the cash register. Carrier attempted to press the tanning salon's "panic button," but the man "swiped [her] hand out of the way." Carrier gave the man all of the money in the cash register and he left. Carrier called 911, ran next door to Tattoo Royale, and told Hebert, Randall, and Goodrich that she had been robbed. The three men ran out the front door in hopes of finding the perpetrator. They saw a van coming up the alleyway on the side of the building. Randall ran alongside the van for a short distance as it sped away and went through a red light. He threw a bottle which hit the van on the passenger side, causing a small dent. Randall and Hebert noted the license plate number of the van and they immediately gave the information to police officers who had responded to the scene of the robbery. The van was registered to the defendant's wife. It was located later that day and brought to the Springfield police department where Carrier, Randall, Hebert, and Goodrich identified it as the van they saw after the robbery. In particular, Randall observed a dent in the place where he had thrown the bottle. As we have discussed, Hebert, Randall, and Goodrich identified the defendant's photograph and each of them testified at trial that they recognized him as the person who was driving the van. Carrier also participated in an out-of-court identification procedure, but she was unable to make an identification.
The theory of the defense was misidentification. To this end, the defendant presented the testimony from a licensed private investigator who had enhanced a still image of the robber, taken from the tanning salon's surveillance camera. That image showed that the robber had a full beard.
After the Commonwealth rested and again at the close of evidence, the defendant moved for required findings of not guilty on the assault and battery and armed robbery charges on the ground that Carrier could not identify him as the person who robbed her. "In determining whether the evidence was sufficient to survive a motion for a required finding, we [ask] whether, after viewing the evidence in the light most favorable to the Commonwealth, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Arce, 467 Mass. 329, 333 (2014). See Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979). "As the defendant moved for a required finding of not guilty at the close of the Commonwealth's case and again at the close of all the evidence, we first consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time." Commonwealth v. Ross, 92 Mass. App. Ct. 377, 378 (2017) (quotations omitted). "Then, we consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case." Ibid.
The Commonwealth presented evidence from three witnesses who observed a man driving a van down the alleyway immediately after the robbery. The driver sped away, running a red light. A rational trier of fact reasonably could conclude that the driver was fleeing the scene because he committed the robbery. See Commonwealth v. Lao, 443 Mass. 770, 779 (2005). From the witnesses' subsequent identifications of the defendant as the driver of the van, the jury also could infer that the defendant had committed the robbery. The investigator's testimony, that the robber appears on the surveillance video to have a "full beard," did nothing to negate the Commonwealth's evidence. See Ross, supra at 381, quoting from Kater v. Commonwealth, 421 Mass. 17, 20 (1995) ("Deterioration occurs where 'evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect' "). Accordingly, the defendant's motions for required findings of not guilty were properly denied.
3. Ineffective assistance. The defendant claims that trial counsel was constitutionally ineffective because he failed to (1) "fully confront" the composition or administration of the photographic array, (2) move to suppress identifications of the van, and (3) request an instruction pursuant to Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980). Recognizing that the preferred method for raising this claim is through a motion for a new trial, Commonwealth v. Zinser, 446 Mass. 807, 810 (2006), the defendant argues that "the factual basis of the claim appears indisputably on the trial record." Id. at 811, quoting from Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).
Applying our familiar standards for reviewing counsel's performance,[6] and having reviewed the record, we conclude that the defendant's claim fails. The jury were aware of the manner in which the photographic arrays were compiled and administered. Through cross-examination, defense counsel highlighted Carrier's failure to make an identification, and pointed to an inconsistency in Goodrich's identification. Then he argued in closing that the identifications were not reliable because (1) "none of the people in the photographs have a full beard," and (2) Carrier did not choose the defendant's photograph. Where, as here, counsel "cross-examined the witnesses extensively, and strenuously argued the weakness of the identification testimony, trial counsel's actions may not be characterized as 'manifestly unreasonable.' " Commonwealth v. Conceicao, 388 Mass. 255, 265 (1983), quoting from Commonwealth v. Levia, 385 Mass. 345, 354 (1982). Nor did they deprive the defendant of an otherwise available, substantial ground of defense.
While the defendant argues that trial counsel should have filed a motion to suppress identifications of the van by Randall, Hebert, Goodrich, and Carrier, he has not satisfied his burden of showing that such a motion would have been successful. See Commonwealth v. Comita, 441 Mass. 86, 91 (2004). Moreover, based on the record before us, we discern no basis upon which a reasonable juror could "conclude that the investigation was careless, incomplete, or so focused on the defendant that it ignored leads that may have suggested other culprits," Silva-Santiago, 453 Mass. at 801, such that a Bowden instruction would have been appropriate.
Judgments affirmed.

The defendant was acquitted of assault by means of a dangerous weapon.

Specifically, the judge found that the group discussed "[w]hat kind of car it was, the license plate number, where it went, that type of thing."

Randall was given an "identification protocol" which states: (1) "You will be asked to view a set of photographs"; (2) "The alleged perpetrator MAY OR MAY NOT be in the photographs"; (3) "It is just as important to clear a person from suspicion as to identify a person as a suspect"; (4) "Individuals depicted in the photographs may not appear exactly as they did on the date of the incident. Features such as weight, facial hair, and hairstyles are subject to change"; (5) "Regardless of whether an identification is made, the investigation will continue"; and (6) "In your own words, how certain are you of the identification?" Randall read, initialed, and signed the protocol.

The judge found that "[t]here is nothing about any one photograph that would tend to attract someone's attention."

"The standards on which the effectiveness of counsel will be evaluated are well known." Commonwealth v. McIntosh, 78 Mass. App. Ct. 37, 42 (2010). "The defendant must show that counsel's performance 'f[ell] measurably below that which might be expected from an ordinarily fallible lawyer' and that, as a result, the defendant has been deprived of 'an otherwise available, substantial ground of defence.' " Ibid., quoting from Commonwealth v. McCrae, 54 Mass. App. Ct. 27, 29 (2002). See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).