The defendant, a registered sex offender, stands convicted of knowingly failing to provide notice of a change of address. G. L. c. 6, § 178H (a ) (1). The statute requires a sex offender who intends to change his or her home address within a city or town to notify the Sex Offender Registry Board (SORB) "not later than ten days prior to establishing such new residence." G. L. c. 6, § 178E (h ). The defendant does not dispute that he is a sex offender potentially subject to the notification requirement or that he did not notify SORB of any address change in the relevant time period. He argues instead that the Commonwealth presented insufficient evidence of a change of address.
Our inquiry, under Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979), is limited to whether, viewing the evidence in the light most favorable to the Commonwealth, a rational finder of fact could have found each element of the crime beyond a reasonable doubt. In that light, the finder of fact -- here, a judge of the Superior Court -- could have found the following.
As of April of 2009, the defendant lived at an apartment on Plantation Street in Worcester. On April 24, the defendant executed a thirty-day tenancy-at-will agreement with Joshua Belanger for an apartment on Westminster Street, also in Worcester. Belanger believed that he gave the defendant the keys that day, after the defendant paid the first and last months' rent, as well as a security deposit valued at two months' rent. Belanger also believed that the defendant moved in to the Westminster Street apartment during "the last couple days of April or the first couple days of May."
In addition, Belanger testified to seeing the defendant at that apartment twice "[d]uring the next few weeks." On the first occasion, he entered the apartment to perform some maintenance. The defendant opened the door for Belanger and it "appear[ed] that [the defendant's] belongings were in the apartment." On the second, he saw the defendant "passed out" in his Jeep immediately outside the apartment. Belanger told him to go inside. Although he did not "visually see him go inside," when Belanger returned a short time later the defendant was not in the Jeep.
Another witness, Detective James Lyman, testified that, in May of 2009, he was investigating the defendant in an unrelated matter. On May 11, he obtained warrants both to arrest the defendant and to search the Plantation Street residence, which was the defendant's address in the registry of motor vehicles and SORB databases. That day, he also was communicating with the defendant "online." Once the defendant said he was "home," Lyman contacted Detective Eric Dyson, another witness, to perform surveillance at the Plantation Street residence in preparation for Lyman to execute the arrest warrant. According to Dyson, when he and another officer arrived at the Plantation Street residence, they knocked on the door and nobody answered.[2] They also looked through a window from a distance of about twenty or twenty-five feet and did not see any lights on. Although Dyson testified that they "couldn't see inside the apartment," he also testified, without objection, that they "discovered that the apartment was vacant, nobody was living there."
Lyman soon obtained information that the defendant was located at the Westminster Street apartment, and on May 12 Lyman obtained a warrant to arrest him there. Other officers then went to the Westminster Street apartment, saw the defendant's Jeep, and arrested the defendant at that location. Lyman then also obtained and executed a search warrant for that apartment. Photographs of the apartment as it appeared that day, which were admitted in evidence, show at least the following items inside: articles of clothing, two vacuum cleaners, a mattress with blankets on top of it next to a table with a lamp, a chair next to a desktop computer monitor, a television that appears to be connected to the cable outlet, a laptop computer, a mantle in the bathroom covered with toiletries, a shampoo bottle inside the shower, two uninstalled window-mounted air-conditioning units, a set of golf clubs, a cat inside a kitchen cupboard, packages of food and cleaning supplies on the kitchen counter, a kettle, a coffee machine, bottles of alcohol, a microwave oven on the kitchen counter, and an opened microwave oven box. The apartment door had a sign with "Burdulis, P." written on it.
The defendant's mother also testified. First, she authenticated a recording of a telephone call between her and the defendant that took place in June of 2009, when the defendant was incarcerated. In the recording, the defendant can be heard saying that an air conditioner "was there when [he] moved in" to the Westminster Street apartment.[3] In addition, the mother testified that the defendant had belongings, including furniture, in the Plantation Street apartment at the time of the arrest, which she and family members later put into storage, and that he left a second vehicle there. That said, she also testified that the defendant "left [Plantation Street] before the lease expired."
A SORB employee testified that the defendant was a registered sex offender and did not notify SORB of his Westminster Street address.
The defendant first argues that the Commonwealth was required to prove that he lived, abided, lodged, or resided at the Westminster Street address for at least four days prior to his arrest. This is incorrect. The four-day requirement applies only to a sex offender's "secondary address," which the statute defines as
"all places where the sex offender lives, abides, lodges, or resides for a period of 14 or more days in the aggregate during any calendar year and which is not a sex offender's primary address; or a place where a sex offender routinely lives, abides, lodges, or resides for a period of 4 or more consecutive or nonconsecutive days in any month and which is not a sex offender's permanent address, including any out-of-state address."
G. L. c. 6, § 178C. There is no such requirement for the sex offender's "home address," which is a sex offender's "primary place of residence," Commonwealth v. Arce, 467 Mass. 329, 332 (2014), and changes to which the defendant is required to report at least ten days prior to moving. G. L. c. 6, § 178E (h ).
Here, the evidence and the reasonable inferences that could be drawn therefrom were sufficient to support a finding that that the Westminster Street apartment was the defendant's home address at the time of his arrest. That evidence included, among other things, Belanger's observations of the defendant and his vehicle at the Westminster Street apartment, the defendant's online representation to Lyman that he was "home" followed by his absence from the Plantation Street residence, Dyson's testimony that the Plantation Street apartment appeared vacant and that he discovered the apartment was in fact vacant, the belongings discovered at the Westminster Street apartment, the defendant's statement to his mother that he had "moved in[to]" the Westminster Street apartment, and his mother's testimony that he left the Plantation Street residence before the lease expired. The Commonwealth therefore introduced sufficient evidence that the defendant was required to notify SORB that he changed his home address to the Westminster Street apartment.
Finally, we are unpersuaded by defense counsel's contention, made for the first time at oral argument, that, because the defendant was in the process of moving, the Westminster Street apartment could not have been his primary place of residence. In the first place, the trial judge was not required to credit the defendant's evidence -- testimony of his mother -- that he still had belongings at his Plantation Street apartment. But, even if the judge had found that the defendant maintained some belongings at Plantation Street at the time of his arrest, viewed in the light most favorable to the Commonwealth, the evidence described above all supports a reasonable inference that Westminster Street was his primary place of residence.
Judgment affirmed.

Although the record is clear that Dyson went to Plantation Street on May 11, it is not clear exactly how much time elapsed between the defendant's statement that he was home and when Dyson arrived at Plantation Street.

Although neither a copy of the recording nor a transcript is part of the appellate record, defense counsel at oral argument conceded that the defendant made this comment.